**FILED**
**Feb 10, 2025**
**11:54 AM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION CLAIMS
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **HEATHER ALLEN,** | ) | |
| **Employee,** | ) | **Docket No. 2023-06-7576** |
| **v.** | ) | |
| | ) | |
| **DELIVERIES VIA ISG, LLC,** | ) | **State File No. 44213-2023** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **BRIDGEFIELD CASUALTY INS. CO.,** | ) | **Judge Joshua D. Baker** |
| | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER

---

The parties appeared for an expedited hearing on January 15, 2025, to argue whether ISG must authorize surgery recommended by an authorized treating physician. After considering the evidence and arguments of both parties, the Court grants her request.

### Claim History

The circumstances concerning Ms. Allen's work accident are not in question. She was in a car accident while working in the course and scope of employment for Deliveries Via ISG (ISG), who accepted the claim. The only issue is whether ISG must authorize surgery—a mid-neck decompressive spinal laminectomy and fusion—recommended by Dr. David Lanford, a neurosurgeon and the authorized treating physician.

ISG denied the surgery, asserting that the need for surgery arose from a preexisting condition as opposed to neck trauma from the accident. So, the parties deposed Dr. Lanford and Dr. John Burleson, who examined Ms. Allen at ISG's request.[1]

---

[1] Dr. Burleson, an orthopedic spine surgeon, did agree that Dr. Lanford's surgical plan to address Ms. Allen's symptoms was reasonable and medically necessary to correct her symptoms. His agreement does not affect the dispute.

ISG relies on four specific records to support its causation defense of a preexisting condition:

1. **February 24, 2015**: Ms. Allen visited a nurse practitioner complaining of shoulder pain. The notes show she had radiating pain and occasional "numbness/tingling" when she woke up in the morning. The nurse diagnosed Ms. Allen with tendonitis.

2. **February 18, 2017**: Ms. Allen had a CT scan that showed "mild degenerative disc and hypertrophic change in the cervical spine."

3. **November 11, 2020**: Ms. Allen fell while unloading boxes at work and went to the hospital for treatment of left-sided pain from her hip to her thigh. The record also read, "She has chronic neck pain but denies any worsening of this."

4. **November 29, 2023**: Ms. Thomas went to the emergency room for chest pain and neurologic symptoms. These included heart palpitations and "left arm numbness and tingling" that "progressed to include numbness and tingling in both her legs and her right arm."

With these records cited, the Court turns to the pertinent parts of the doctors' deposition testimonies.

Dr. Lanford testified Ms. Allen denied preexisting neck problems and that "based on her history", her need for surgery "was . . . more than 50 percent related to this car crash considering all causes." When asked if she would have needed surgery absent the car accident Dr. Lanford said, "[A]ssuming the car crash is when the onset of her symptoms occurred, then…the car crash is the reason she's having surgery[.]"

Dr. Lanford denied that any of the records cited by ISG's counsel changed his causation opinion. He agreed that Ms. Allen, like many her age, had some degenerative spinal problems before the accident. Dr. Lanford agreed the accident was "a straw that broke the camel's back", as it caused the need for surgery. He explained that he sees many essentially normal patients with "asymptomatic" spinal conditions but would never operate on them as a preventative measure because they are at low risk of ever needing it absent "something profound happening[.]"

In his deposition, Dr. Burleson said that Ms. Allen's condition arose mainly from progression of her degenerative spine condition, not the car accident:

I think the car accident likely played some role in the specific timing, but I think that, in this situation, it's the chronic pathology that she has of a degenerative condition that almost certainly leads to surgery in someone who has this at 30 years old at some point during their life. So I think greater than

50 percent is from the degeneration. But the numbers that I assigned was 75 to 80 percent responsibility for the chronic condition and 20 to 25 percent for the car accident.

Dr. Burleson went on to explain that the car accident was the "heavy-handed straw that broke the camel's back" and that she would have need[ed] the surgery at some point because she had a "very bad neck."

Dr. Burleson somewhat agreed with Ms. Allen's position that the car accident necessitated surgery. He agreed it was "fair" to say that the car accident caused her asymptomatic neck condition to become symptomatic. He also agreed that despite Ms. Allen's degenerative condition, he would not have operated on her as a preventative measure unless the accident had occurred. Finally, when asked about the records ISG relied on to support its causation argument, he said that it was "reasonable" to conclude her symptoms were caused by preexisting spinal stenosis based on the 2015 record and the 2017 CT scan if "we had no other cause." However, Dr. Burleson would not say that the numbness and tingling at those times did not result from another cause, such as carpal tunnel.

ISG also presented reports containing causation opinions from two other physicians, Dr. Kimberly Terry and Dr. Luc Jasmin. Both doctors said that Ms. Allen's need for surgery did not arise from her car accident but from her preexisting degenerative spinal condition. Both described her condition as part of the normal aging process or diseases of life.

## Findings of Fact and Conclusions of Law

To prevail at this expedited hearing, Ms. Allen must show she would likely succeed at a final hearing in proving entitlement to the recommended surgery. Tenn. Code Ann. § 50-6-239(d)(1) (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Mar. 27, 2015).

Here, all the experts agree that Ms. Allen had a preexisting degenerative neck condition. The threshold issue is whether the car accident or the degenerative condition necessitated the surgery Dr. Lanford recommended.

Under the Workers' Compensation Law, an employer "shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Tenn. Code Ann. § 50-6-204(a)(1)(A). The Court holds that the car accident caused the need for surgery and orders ISG to provide it.

The Court's decision relies on law giving the opinion of the doctor "selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-

204(a)(3)" a rebuttable presumption of correctness. *Gilbert v. United Parcel Serv., Inc.*, 2019 TN Wrk. Comp. App. Bd. LEXIS 20, at *13 (June 7, 2019). So, Dr. Lanford's opinion is presumed correct.

With that presumption, the Court must weigh the opinions of the other doctors to see if they overcome Dr. Lanford's by considering, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon*, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Mar. 12, 2015).

Here, the experts were all well-qualified, but only Drs. Lanford and Burleson physically examined Ms. Allen. All the experts relied on the same imaging studies and records, even though Dr. Lanford did not see some of them until his deposition. In examining Ms. Allen, neither doctor noted any significant difference in their results. Both agreed she needed the surgery, but as noted above, the reason she needs it is the determinative issue.

On this issue, the Court finds that the two doctors' differing opinions are just that—differing opinions. Further, none of the records cited by ISG swayed Dr. Lanford's opinion that Ms. Allen needs surgery because of the car wreck. So, despite the agreement of two other doctors with the same opinion as Dr. Burleson, the Court holds that ISG failed to rebut the presumption of correctness given Dr. Lanford's opinion on causation. Further because the surgical recommendation from him is presumed reasonable and medically necessary, the Court orders ISG to authorize surgery.

It is ORDERED as follows:

1. ISG shall immediately authorize the surgery recommended by Dr. Lanford.

2. This case is set for a status conference on **Monday, July 14, 2025, at 1:30 p.m. (CDT)**. The parties must call 615-741-2113 to participate.

3. Unless an interlocutory appeal of the expedited hearing order is filed, compliance with this order must occur no later than seven business days from the date of entry of this order as required by Tennessee Code Annotated section 50-6-239(d)(3). The employer must submit confirmation of compliance with this order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this order. Failure to submit confirmation within seven business days may result in a penalty assessment for noncompliance. For questions regarding compliance, contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**IT IS ORDERED**.

**ENTERED ON FEBRUARY 10, 2025.**


_____
**JOSHUA DAVIS BAKER, JUDGE**
**Court of Workers' Compensation Claims**


## APPENDIX

1. Affidavit of Heather Allen
2. Medical Records
3. First Report of Injury
4. Deposition transcript of Dr. Greg Lanford
5. Deposition transcript of Dr. John Burleson

## CERTIFICATE OF SERVICE

I certify that a copy of this order was sent as indicated on February 10, 2025.

| Name | Certified Mail | Fax | Email | Service sent to: |
|---|---|---|---|---|
| Brian Dunigan, Employee's Attorney | | | X | brian@poncelaw.com |
| Ben Norris, Allen Grant, Employer's Attorneys | | | X | bnorris@eraclides.com agrant@eraclides.com |

_____
**PENNY SHRUM, COURT CLERK**
wc.courtclerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*